**HEIGHTS COMMUNITY CONGRESS,**
**Plaintiff,**

v.

**SMYTHE, CRAMER CO.,**
**et al., Defendants,**

v.

**La Marr ANTHONY, et al.,**
**Third-party Defendants.**

No. 1:93–CV–994.

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 23, 1994.

Glenn E. Billington, Charlett Bundy, Cleveland Heights, OH, for plaintiff Heights Community Congress.

Mary Beth Ballard, Ziegler, Metzger & Miller, Cleveland, OH, for defendants Smythe, Cramer Co.

Marilyn Tobocman, Housing Advocates, Inc., Edward G. Kramer, Kramer & Tobocman, Cleveland, OH, for third-party defendants La Marr Anthony.

## ORDER

ANN ALDRICH, District Judge.

Heights Community Congress ("HCC") brings this action pursuant to the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, against Smythe, Cramer Co. Smythe, Cramer Co. asserts counterclaims against HCC and third-party claims against HCC's trustees, alleging violations of RICO, 18 U.S.C. § 1961 *et seq.*, and the Ohio Corrupt Activities Act, Ohio Rev.Code § 2923.31 *et seq.* HCC and its trustees move to dismiss the counterclaims and third-party claims, and Smythe, Cramer opposes those motions. For the reasons set out below, the motions are granted.

### I.

The facts as alleged in the counterclaim and third-party complaint are as follows.

HCC is a non-profit organization purportedly organized to combat discriminatory housing practices. Smythe, Cramer is a real estate company, which employs agents through which homes are bought and sold.

On July 28, 1992, HCC sent a letter to Smythe, Cramer informing it that HCC had conducted an "audit" concerning its real estate operations. The letter indicated in gen-

eral terms that HCC had sent white and black "testers" with similar backgrounds and home search objectives to a Smythe, Cramer location. These testers were treated differently on account of their race. The letter stated that HCC would not release the text of the reports it had gathered, unless litigation became necessary. The letter then referred to several published cases interpreting the Fair Housing Act.

In a meeting between counsel for HCC and Smythe, Cramer on September 24, 1992, HCC presented a second letter to Smythe, Cramer. In this letter, HCC expressed a willingness to settle the matter for $30,-000.00, in order to avoid litigation. If Smythe, Cramer Co. were unwilling to settle, HCC would seek legal redress. On September 29, 1992, HCC sent a similar letter to Rybka Realty Co., a company not involved in this litigation, whom HCC also claimed was violating the Fair Housing Act. The counterclaim and third-party complaint alleges, without further specificity, that HCC has sought similar "payoffs" from other companies.

Smythe, Cramer refused to negotiate a settlement, and this action ensued.

### II.

■ In deciding a motion to dismiss under Rule 12(b)(6), the allegations of the complaint must be taken as true and construed in a light most favorable to the plaintiff. *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 325, 111 S.Ct. 1842, 1845, 114 L.Ed.2d 366 (1991); *Dana Corporation v. Blue Cross & Blue Shield,* 900 F.2d 882 (6th Cir.1990); *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489 (6th Cir.1990). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986). The complaint is to be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### III.

Title 18, U.S.C. § 1962 prohibits enterprises from engaging in a pattern of "racketeering activity" under certain conditions. Title 18 U.S.C. § 1961 provides in part:

"racketeering activity" means (A) any act or threat involving ... *extortion* ... which is chargeable under State law and punishable by imprisonment for more than one year.

18 U.S.C. § 1961(1)(A) (emphasis added). Title 18 U.S.C. § 1951 provides in pertinent part: "The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

Ohio Rev.Code § 2923.32 similarly prohibits certain enterprises from engaging in a pattern of "corrupt" activity under certain circumstances. Corrupt activity is defined in part as a violation of Ohio Rev.Code § 2905.-11. That section prohibits extortion:

No person, with purpose to obtain any valuable thing or valuable benefit or to induce another to do an unlawful act, shall do any of the following:

(1) Threaten to commit any felony;

(2) Threaten to commit any offense of violence;

(3) Violate section 2903.21 or 2903.22 of the Revised Code;

(4) Utter or threaten any calumny against any person;

(5) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage his personal or business repute, or to impair his credit.

Ohio Rev.Code § 2905.11(A)(1)–(5).

■ Here, Smythe, Cramer Co. alleges that HCC and its trustees violated both RICO and the Ohio Corrupt Activities Act through the commission of at least two predicate acts of extortion, which constituted the "racketeering" or "corrupt" activity providing the basis for liability under the federal and state statutes. These extortionate acts are the demands for settlement, coupled with a threat of litigation, HCC made upon Smythe, Cramer and Rybka Realty.

Smythe, Cramer predicates its action on the theory that HCC used settlement demands and threats to sue merely for the purpose of fund-raising.

However, a threat to sue unless an individual agrees to a settlement "does not constitute a criminal act and is not a predicate act for RICO purposes." *American Nursing Care of Toledo v. Leisure,* 609 F.Supp. 419, 430 (N.D.Ohio 1984); *see also I.S. Joseph Co., Inc. v. J. Lauritzen A/S,* 751 F.2d 265, 267–268 (8th Cir.1984) (threat to bring civil action, even if action would be entirely frivolous or brought in bad faith, does not constitute extortion).

■ In addition, a threat to sue does not constitute extortion within the meaning of Ohio Rev.Code § 2905.11(A). The only basis on which to argue the contrary is § 2905.-11(A)(5), which defines extortion as exposing or threatening to expose any person to any matter threatening to damage his personal or business repute, for the purpose of obtaining a thing of value. On its face, this section may appear to encompass a threat to bring a lawsuit made for the purpose of obtaining a thing of value. However, such a reading leads to an entirely absurd result. If a threat to bring a lawsuit constitutes a threat to expose one to matter damaging to one's reputation, then actually bringing a lawsuit must constitute actually exposing one to matter damaging to one's reputation. Since most civil actions have as their aim the receipt of a thing of value, any person who brings a lawsuit is committing an act of extortion in Ohio if the statute has the broad meaning Smythe, Cramer's argument suggests. In the absence of authority compelling such a reading, this Court easily rejects such an absurd interpretation of Ohio's definition of extortion.

■ Smythe, Cramer argues in its memorandum in opposition that it is not the threat to sue that constitutes extortion, but rather the demand for a settlement without a full disclosure of the evidence supporting HCC's claim. However, Smythe, Cramer offers no support for the proposition that an individual who seeks to settle a case without first disclosing all the evidence that he possesses commits extortion. Absent contrary authority, this Court finds Smythe, Cramer's argument to be wholly without merit.

Nothing else in Smythe, Cramer's counterclaim and third-party complaint suggests any other illegal activity on the part of HCC and its trustees, nor does Smythe, Cramer allege that conduct other than the alleged extortion constitutes racketeering or corrupt activity. Absent an allegation of racketeering or corrupt activity, a claimant cannot make out a violation of either RICO or the Ohio Corrupt Activities Act.

Smythe, Cramer has failed to allege any extortionate act on the part of HCC or its trustees. As a consequence, Smythe, Cramer has not alleged any racketeering or corrupt activity, on which violations of either RICO or the Ohio Corrupt Activities Act depend. Therefore, Smythe, Cramer fails to state a claim against HCC or its trustees under either statute.

## IV.

Smythe, Cramer alleges no facts proof of which would establish a single instance of racketeering or corrupt activity. Consequently, the counterclaim and third-party complaint fail to state claims on which relief can be granted. HCC's and the trustees' motions (doc. #'s 66 and 78) are granted, the counterclaim and third-party complaint are dismissed, and judgment is entered on these claims in favor of HCC and its trustees.

This case is set for a case management conference on August 31, 1994, before the Honorable Ann Aldrich.

IT IS SO ORDERED.