**Linda McGEE, Plaintiff,**

v.

**EAST OHIO GAS COMPANY, Defendant.**

**No. 99–CV–813.**

United States District Court, S.D. Ohio, Eastern Division.

Sept. 6, 2000.

William B. Senhauser, Equal Justice Foundation, Toledo, OH, for Plaintiff.

David A. Kutik, Michael L. Snyder, Jones, Day, Reavis & Pogue, Cleveland, OH, for Defendant.

## OPINION AND ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on the Defendant's Motion for Partial Summary Judgment and to Dismiss filed on April 3, 2000. Specifically, the Defendant, East Ohio Gas Company, moves for summary judgment on the Plaintiff's claims brought under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 and Ohio Revised Code section 4112.02. East Ohio further moves for dismissal of the Plaintiff's Ohio Corrupt Practices Act claim. *See* OHIO REV. CODE § 2923.32. Contingent on these two motions being granted, East Ohio moves for dismissal of the claim of breach of duty to serve, for lack of subject matter jurisdiction. For the following reasons, the Defendant's Motion is **GRANTED** in part and **DENIED** in part.

### II. FACTS

Joseph McGee, the Plaintiff's husband, requested and received gas at 355 Guilford Avenue in Wooster, Ohio for a period ending March 1993. Joseph McGee owed East Ohio Gas Company ("East Ohio"), $314.98 when he discontinued his service.

Linda McGee requested and received service at 447½ Spink Road in Wooster, Ohio between May and December of 1997. When she discontinued her gas service, Ms. McGee owed East Ohio $206.18, which remains unpaid. From June 30, 1998, to July 1, 1999, Joseph and Linda McGee received gas service at 283 East Wood in Shreve, Ohio. When service was discontin-

ued, they owed East Ohio $108.99, which has not been paid.[1]

In July of 1999, Linda and Joseph McGee moved into a home at 114½ Maple Avenue. Ms. McGee requested gas service for the new residence. An East Ohio representative installed a meter, and while he was at the residence, informed Joseph McGee that both the furnace and the water heater should be taken apart and cleaned. Joseph McGee then signed the Customer Meter/Service Order. When East Ohio learned that Joseph McGee was a customer at 114½ Maple Avenue, it reviewed its records and discovered that he had an arrearage of $314.98 from the Guilford Avenue account. Joseph McGee's account balance from Guilford Avenue was transferred to the Maple Avenue account.

Payment of $314.98, the past-due amount for the Guilford Avenue account, was received on February 7, 2000 by a collection agency for East Ohio. East Ohio received the payment on March 10, 2000 and immediately credited the Maple Avenue account.

The Plaintiff, Ms. McGee, brought a class action suit, on behalf of herself and others similarly situated, as a "credit-worthy married woman" stating that the Defendant violated her rights under the Equal Credit Opportunity Act and section 4112.021 of the Ohio Revised Code by discriminating against her on the basis of her sex and/or marital status. Ms. McGee further complains that East Ohio violated the state corrupt practices act and breached its duty to serve. The Plaintiff requests equitable and legal relief.

This matter is before the Court on the Defendant's Motion for Partial Summary Judgment and to Dismiss. The Defendant requests that this Court grant its Motion for Summary Judgment on the first two

---

1. It is not clear whose name was on the account at this address. East Ohio implies that it was a joint account, while the Plaintiff states it was in her husband's name. As this is a Motion for Partial Summary Judgment, the facts will be viewed a light most favorable to Ms. McGee, the nonmovant.

causes of action in the Amended Complaint; dismiss the third cause of action for failure to state a claim upon which relief can be granted; and dismiss the fourth cause of action for lack of jurisdiction.

## III. STANDARD OF REVIEW

### A. RULE 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a motion to dismiss based on subject matter jurisdiction can fall into two categories: facial attacks and factual attacks. *See U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994). Facial attacks question the sufficiency of the pleading. *See id.* Review of such a motion must take the allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *See id.* A factual attack, however, is a challenge to the factual existence of jurisdiction. *See id.* In considering a motion that questions the factual existence of subject matter jurisdiction, a court need not rely on a presumption of truthfulness in the pleading's allegations. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A party opposing a factual Rule 12(b)(1) motion has the burden of proving jurisdiction and may not rest on factual assertions in its pleadings. *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990); *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. A court reviewing a factual attack must resolve any factual disputes by weighing the evidence that gives rise to the factual controversy. *Moir*, 895 F.2d at 269; *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. The court has discretion in establishing the factual predicate of whether subject matter jurisdiction exists. *See U.S. v. Ritchie*, 15 F.3d at 598; *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. To resolve jurisdictional facts in dispute, a court may, at its discretion, allow affidavits, documents and even a limited evidentiary hearing. *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325.

### B. RULE 12(b)(6) AND SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide that when a motion to dismiss brought under Rule 12(b)(6) includes "matters outside of the pleading," that the motion should be treated as one for summary judgment under Rule 56(c). FED. R. CIV. P. 12(b); *see also Greenberg v. Life Ins. Co.*, 177 F.3d 507 (6th Cir.1999) (finding that attached illustrations were outside the pleadings but that the insurance policies in question were not); *McCottry v. Runyon*, 949 F.Supp. 527, 528 n. 1 (N.D.Ohio 1996) (finding that attached affidavits and deposition transcripts converted the motion to dismiss into a motion for summary judgment).

Here, the Defendant has submitted the affidavit of Vicki L. Rhiel in its Motion for Partial Summary Judgment and to Dismiss. The Defendant's Motion will be consolidated and treated as one for summary judgment under Federal Rule of Civil Procedure 56(c). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable

jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (summary judgment appropriate where the evidence could not lead a trier of fact to find for the non-moving party).

In evaluating such a motion, the evidence must be viewed in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *See Anderson,* 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

## IV. ANALYSIS

### A. Mootness

■ A case is moot:

[w]hen the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.... [A] controversy is moot when a court cannot render an effective decree responsive to the complaint ... [a] case is only moot if, assuming that the plaintiff receives the relief which he or she requests, such relief would no longer afford any meaningful legal benefit.

*Gao v. Jenifer,* 185 F.3d 548, 557 (6th Cir.1999) (citations and internal quotations omitted); *see also Green v. Nevers,* 196 F.3d 627, 632 (6th Cir.1999).

■ The Defendant, East Ohio, argues that the Plaintiff's Equal Credit Opportunity Act ("ECOA") and Ohio Civil Rights Commission Act claims are moot, as the arrearage of $314.98 was paid before the Amended Complaint was filed. The Plaintiff responds that East Ohio is asking her to pay for services at Shreve, Ohio, an account for which only Joseph McGee is responsible.

The Court finds that the issues presented under the ECOA and the Ohio Civil Rights Act are not moot as Ms. McGee is being asked to assume the arrearage of her husband's account in Shreve, Ohio. Furthermore, Ms. McGee may be entitled to declaratory and equitable relief as well as attorney fees under the ECOA, and not just compensation for the alleged $314.98 loss. If a defendant is found to have violated the ECOA, a plaintiff is entitled to actual damages, punitive damages, equitable and declaratory relief, costs and attorney fees. *See* 15 U.S.C. § 1691e(a)-(d). The fact that Joseph McGee paid $314.98 in arrearage to East Ohio does not, therefore, render this case moot.

### B. Equal Credit Opportunity Act and Ohio Civil Rights Acts Claims

East Ohio contends that the Plaintiff has not satisfied the conditions precedent to obtaining relief under the ECOA or the Ohio Civil Rights Act because she is not creditworthy. Because East Ohio opened an account for Linda McGee, the Defendant argues that it did not discriminate on the basis of marital status and/or sex. Ms. McGee responds that East Ohio conditioned the continuance of her account and her credit on paying the amount owed by her husband. In addressing these arguments, the Court will examine the Plaintiff's ECOA and Ohio Civil Rights Act claim separately.

#### 1. Equal Credit Opportunity Act

First, the ECOA prohibits discrimination by a creditor on the basis of marital status. *See* 15 U.S.C. § 1691(a)(1). "Martial status" is defined as "[t]he state of being unmarried, married, or separated, as defined by applicable state law." 12 C.F.R. § 202.2(u). The "[p]urpose of the ECOA is to prohibit a creditor from requiring the signature of an applicant's spouse if the applicant individually qualifies under the lender's standards for creditworthiness." *Riggs Nat'l Bank of Wash-*

*ington v. Linch,* 829 F.Supp. 163, 168 (E.D.Va.1993). The Code of Federal Regulations elaborates:

(a) Individual accounts. A creditor shall not refuse to grant an individual account to a creditworthy application on the basis of . . . marital status.

(d) Signature of spouse or other person. (1) Rule for qualified applicant. Except as provided in this paragraph, a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested.

12 C.F.R. § 202.7(a) & (d)(1).

■ A case brought under the ECOA follows the same burden-shifting analysis as other discrimination cases. *See Resolution Trust Corp. v. Townsend Assoc.,* 840 F.Supp. 1127, 1142 n. 13 (E.D.Mich.1993) (finding that "[i]f the claimant makes out a prima facie case by showing that that party is a member of a protected class, the burden shifts to the creditor to establish a non-discriminatory basis for its actions.") (citations omitted). Here, for Ms. McGee to establish a violation she must demonstrate: "(1) [s]he engaged in a statutorily protected activity; (2) suffered an adverse credit action; and (3) a causal connection exists between the two." *Lewis v. ACB Bus. Serv.,* 135 F.3d 389, 406 (6th Cir.1998) (finding that an ECOA plaintiff must establish the same elements as a Title VII retaliation plaintiff). An adverse action is defined as "[a] denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or substantially the terms requested." 15 U.S.C. § 1691(d)(6).

■ Here, Ms. McGee engaged in protected activity: she applied for individual credit with East Ohio. Second, Ms. McGee suffered an adverse employment action as the terms of her existing credit arrange-

ment were altered by East Ohio to include her husband's past-due account balance. Viewing the facts in the light most favorable to Ms. McGee, her account was conditioned on her accepting the arrearage of her husband, Joseph. Finally, the two events were causally connected—but for Ms McGee's marital relationship with Joseph, the terms of her credit with East Ohio would not have been changed. In a broader context, East Ohio's actions violate the purpose behind the ECOA; Ms. McGee qualified for credit individually, but her continued status of "creditworthy" was hinged to her husband's past-due account. Thus, viewing the facts in the light most favorable to Ms. McGee, the Plaintiff states a cause of action under the ECOA, and the Court **DENIES** the Defendant's Motion for Partial Summary Judgment on the Plaintiff's ECOA claim.

### 2. Ohio Civil Rights Act

■ The Ohio Revised Code provides:

(B) It shall be an unlawful discriminatory practice:

(1) For any creditor to do any of the following:

(a) Discriminate against any applicant for credit in the granting, withholding, extending, or renewing of credit, or in the fixing of the rates, terms, or conditions of any form of credit, on the basis of . . . marital status, . . .

(h) Fail or refuse on the basis of . . . marital status, . . . to maintain, upon the request of the individual, a separate account for each individual to whom credit is extended; . . . .

OHIO REV.CODE § 4112.021.

Viewing the facts in the light most favorable to Ms. McGee, East Ohio, a creditor, discriminated against her in renewing her account and in conditioning the terms of her credit account based on her marital status. In addition, a reasonable fact-finder could conclude that subsection (h) was violated as Ms. McGee had applied for an individual account for her residence which

was *de facto* refused by East Ohio because of her marital status.

The Defendant relies on a subsection of the Ohio Administrative Code to support its argument that Ms. McGee was not creditworthy:

> [A]n applicant who owes an unpaid balance for previous residential service, whether said bill is owed as a result of previous service to said applicant or is owed under a guaranty agreement shall not be deemed to have satisfactorily established his financial responsibility so long as such bill remains unpaid.

Ohio Admin. Code § 4901:1–17–03(D).

The Defendant, in bringing this Code provision to the Court's attention, proves the Plaintiff's claim. Here, Ms. McGee was the applicant, not Joseph McGee; second, Ms. McGee applied for individual credit and was given such an account; and third, East Ohio conditioned Ms. McGee's account on payment of her husband's past-due bill.

This Court therefore **DENIES** the Defendant's Motion for Partial Summary Judgment under Ohio Revised Code section 4112.021.

### C. PUCO's Jurisdiction

■ According to East Ohio, PUCO is vested with jurisdiction over utility service related claims. The Plaintiff responds that PUCO is not a court and does not have jurisdiction to award damages, or to determine legal rights and responsibilities.

The Supreme Court of Ohio has made clear that "[t]he public utilities commission is an administrative board and has only such authority as the statute creating it has conferred." *Incorporated Village of New Bremen v. Public Util. Comm'n,* 103 Ohio St. 23, 132 N.E. 162, 162 (1921) (syllabus ¶ 1). PUCO has been granted "[e]xclusive jurisdiction to hear and determine matters which are in essence rate and

service oriented...." *Kazmaier Supermarket, Inc. v. Toledo Edison Co.,* 61 Ohio St.3d 147, 573 N.E.2d 655, 660 (1991). This finding "[i]n no manner diminishes the basic jurisdiction of the court of common pleas in other areas of possible claims against public utilities." *Id.* Courts of the state of Ohio have jurisdiction over common law tort, property and contract claims. *See State ex. rel. Ohio Power Co. v. Harnishfeger,* 64 Ohio St.2d 9, 412 N.E.2d 395, 396–97 (1980); *see also Marketing Research Servs. v. Public Util. Comm'n of Ohio,* 34 Ohio St.3d 52, 517 N.E.2d 540, 544 (1987) (finding that "[t]he PUCO is not a court of general jurisdiction, and therefore has no power to determine legal rights and liabilities with regard to contract rights or property rights, even though a public utility is involved.") (citations omitted).

The Court finds that it has jurisdiction to hear the Plaintiff's claims, as PUCO has jurisdiction over only rates and services. This case does not raise a question within these parameters. Instead, Ms. McGee is alleging that East Ohio discriminated against her in extending credit on the basis of her marital status.[2]

The fact that Ms. McGee brought her claim under Chapter 4112 and not under Chapter 4905 is significant in two respects. First, PUCO has jurisdiction to hear claims based on Chapter 4905. *See, e.g., Milligan v. Ohio Bell Tel. Co.,* 56 Ohio St.2d 191, 383 N.E.2d 575, 577 (1978). Had Ms. McGee brought a claim under Chapter 4905, an argument could be made that PUCO had jurisdiction over that claim. The Plaintiff, however, did not invoke Chapter 4905.

Second, in *Elek v. Huntington National Bank,* 60 Ohio St.3d 135, 573 N.E.2d 1056, 1057 (1991), the Supreme Court of Ohio held: "[A] plain reading of [4112.99] yields the unmistakable conclusion that a civil

---

**2.** Although this Court finds that the Plaintiff's argument that a court only should defer to an agency when the question at issue is within the agency's particular area of expertise is

correct, *see Ricci v. Chicago Mercantile Exch.,* 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973), this Court need not reach this issue in the present case.

action is available to remedy any form of discrimination identified in R.C. Chapter 4112." "[R].C. 4112.99 is to be liberally construed to promote its object (elimination of discrimination) and protect those to whom it is addressed (victims of discrimination)." *Id.* at 1058. Therefore, based on *Elek*, the Plaintiff has a private right of action for a claim of discrimination brought under section 4112.021. The Court therefore finds that it has jurisdiction over the Plaintiff's claims and **DENIES** the Defendant's Motion to Dismiss.

### D. Ohio Corrupt Practices Act

█ Pursuant to the Ohio Corrupt Practices Act, Ohio Revised Code Section 2923.32:

> (A)(1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.
>
> .     .     .     .·.     .
>
> (3) No person, who knowingly has received any proceeds derived, directly or indirectly, from a pattern of corrupt activity or the collection of any unlawful debt, shall use or invest, directly or indirectly, any part of those proceeds, or any proceeds derived from the use or investment of any of those proceeds, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

OHIO REV.CODE § 2923.32(A)(1) & (3). An "enterprise" includes a corporation, legal entity or an organization. OHIO REV.CODE § 2923.31(C). "Pattern of corrupt activity" includes "[t]wo or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connection in time and

place that they constitute.a single event." OHIO REV.CODE § 2923.31(E). A "corrupt activity" is:

> [e]ngaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following:
>
> (2) Conduct constituting any of the following:
>
> (a) A violation of section ... 2905.11 [extortion] ... 2913.05 [telecommunications fraud] ... of the Ohio Revised Code....
>
> (c) Any violation of section ... 2913.02, [theft] ... of the Revised Code, ...

OHIO REV.CODE § 2923.31(I)(2)(a), (c).

East Ohio contends that failure to plead adequately telecommunications fraud, theft and extortion precludes the Plaintiff from maintaining a Corrupt Practices Act claim.

Here, East Ohio is an enterprise, as defined by the Ohio statute, as it is a corporation, legal entity or organization. This Court will assume for the purposes of this Motion that a pattern of corrupt activity has transpired.[3] The Court will next look to determine whether East Ohio engaged in a pattern of corrupt activity through telecommunications fraud, theft or extortion.

### 1. Telecommunications Fraud

The Defendant argues that the Plaintiff has not met the particularity requirement of Federal Rule of Civil Procedure 9(b), for her claim based on section 2913.05(A) of the Ohio Revised Code, telecommunications fraud.

Federal Rule of Civil Procedure 9(b) provides that in a claim of fraud, "[t]he circumstances constituting the fraud ... shall be stated with particularity." FED. R. CIV. P. 9(b). This Circuit "[r]eads rule 9(b)'s requirement 'liberally, ... requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged

---

**3.** The parties have agreed to have this Court determine the present matter before deciding the Plaintiff's Motion to Certify Class.

misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir.1999) (quoting *Coffey v. Foamex, L.P.*, 2 F.3d 157, 161–62 (6th Cir.1993)). Furthermore, "[a]llegations of fraudulent misrepresentations must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Advocacy Org.*, 176 F.3d at 322 (citation omitted).

In this case, the Plaintiff alleges violation of Ohio's telecommunications fraud statute, which provides:

No person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, or telecommunications service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud.

OHIO REV.CODE § 2913.05(A). "Defraud" is defined as "[t]o knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." OHIO REV. CODE § 2913.01(B).

Here, the Plaintiff pled:

29. Within the past six years, directly or indirectly, that enterprise(s) has conducted business affairs as to plaintiff and the members of the plaintiff class through a pattern of corrupt activity, or have participated in such, . . .

30. The corrupt activity includes but is not limited to use of telecommunication devices in furtherance of the practice of withholding or disconnecting necessary gas service as a means of forcing members of the plaintiff class to pay past due gas bills which are not legally owed, or which are legally owed only by others, . . .

Here, the Court finds that the Plaintiff has not alleged sufficiently the time, place or content of the misrepresentation on which she relied. Neither has Ms. McGee pled with sufficient particularity that East Ohio acted knowingly. The Court therefore **GRANTS** the Defendant's Motion to Dismiss the Plaintiff's telecommunications fraud claim, under Ohio Revised Code section 2913.01.

**2. Theft or Theft by Deception**

■ Section 2913.02(A)(1) of the Ohio Revised Code, defines theft, as alleged in the Amended Complaint, as follows:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent; . . .

(3) By deception; . . .

OHIO REV.CODE § 2913.02(A)(1) & (3).

The Defendant states that Ms. McGee has not alleged that East Ohio obtained or executed control over the Plaintiff's property or services. Likewise, with regard to the claim of theft by deception, the Defendant argues that the Plaintiff must establish "theft," which she has not done.

To support her claim, Ms. McGee states in paragraph 30 of her Amended Complaint that East Ohio engaged in "[w]ithholding or disconnecting necessary gas service as a means of forcing members of the plaintiff class to pay past due gas bills which are not legally owed, or which are legally owed only by others . . ."

The Court finds that Ms. McGee's allegations are not sufficient to support a claim either of theft or of theft by deception. First, Ms. McGee was not the owner of either the property or the services in question; rather, East Ohio was the owner. Second, the allegations in the Amended Complaint of East Ohio disconnecting service when bills were not legally owed is inconsistent with the fact that Joseph

McGee paid East Ohio $314.98 for a past-due account. Although East Ohio may have discriminated against Ms. McGee, it is not disputed East Ohio was attempting to collect an arrearage from Joseph McGee. The past-due account, a form of property, was owned by East Ohio. The Court therefore **GRANTS** the Defendant's Motion to Dismiss with respect to Ms. McGee's claims of theft.[4]

### 3. Extortion

■ Section 2905.11 of the Ohio Revised Code, which defines extortion, provides:

(A) No person, with purpose to obtain any valuable thing or valuable benefit or to induce another to do an unlawful act, shall do any of the following:

(1) Threaten to commit any felony; . . .

(5) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit.

OHIO REV.CODE § 2905.11(A)(1) & (5).

East Ohio contends that the Plaintiff has not alleged that it impermissibly exposed information or that threats were made, as required by Ohio's extortion statute. The Plaintiff's credit was not impaired, and East Ohio complied with the rules as established by PUCO by allowing service to be conditioned on the payment of prior bills. The Plaintiff points out, in response, that East Ohio sought payment of $314.98 from her by asserting her obligations to pay another's bill, by terminating her individual account and by threatening to terminate her credit entirely if she refused.

In this case, East Ohio's alleged actions of threatening to terminate Ms. McGee's credit to obtain a thing of value, that is

Joseph McGee's past-due bill, may technically violate the language of Ohio Revised Code section 2905.11(A)(1).[5] But, in *Heights Community Congress v. Smythe*, 862 F.Supp. 204, 207 (N.D.Ohio 1994), the court found that threatening to bring a lawsuit did not constitute extortion even though the letter of the statute was violated. The *Smythe* Court found instead that "[o]n its face, [section 2905.11(A)] may appear to encompass a threat to bring a lawsuit made for the purpose of obtaining a thing of value. However, such a reading leads to an entirely absurd result." This Court finds that the same "absurd" result would be reached in this case if this Court were to find that East Ohio committed extortion by trying to collect a past-due bill. The absurd result that would be reached is that any time a creditor attempted to collect overdue balances by threatening to close an account, the creditor could be liable for extortion.

Having found that Ms. McGee has not established a claim of theft, theft by deception or telecommunications fraud, and finding no other basis for the Plaintiff's allegation of a violation of Ohio's Corrupt Practice Act, the Court **GRANTS** the Defendant's Motion to Dismiss the Plaintiff's claim based on Ohio Revised Code section 2923.32.

### E. Remaining State Law Claims

Finally, the Defendant argues that since the federal claim is defective, this Court should not exercise jurisdiction over the remaining state law claims. Having found, however, a basis for federal question jurisdiction in the ECOA, this Court **DENIES** the Defendant's Motion and will continue to exercise jurisdiction over the Plaintiff's fourth cause of action, breach of public duty to serve.

---

4. The court further **GRANTS** the Defendant's Motion to Dismiss the claim of theft by deception—as the Court has found that there was no theft there can be no theft by deception.

5. It is not clear whether Ms. McGee's credit would have been impaired in the eyes of a third party, or just through her account with

East Ohio. Although the distinction is not material, as this claim is being dismissed on other grounds, Ms. McGee's impaired credit would not have been "exposed" had it only involved the credit relationship between herself and East Ohio.

## V. CONCLUSION

For the following reasons, the Defendant's Motion for Partial Summary Judgment and to Dismiss is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**