CITY OF OLMSTED FALLS,
et al., Plaintiffs,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, et al.,
Defendants.

No. 1:02 CV 2210.

United States District Court,
N.D. Ohio,
Eastern Division.

May 13, 2003.

Barbara E. Lichman, Berne C. Hart, Chevalier, Allen & Lichman, LLP, Costa Mesa, CA, Kevin T. Roberts, Roberts Law Firm, Cleveland, OH, for plaintiffs.

Andrew J. Doyle, U.S. Dept. of Justice, Environment & Natural Resources Division, Washington, DC, Steven J. Paffilas, U.S. Attorney's Office, Cleveland, OH, for defendants.

*Memorandum of Opinion and Order*

GAUGHAN, District Judge.

### INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss First Amend-ed Complaint in Part (Doc. 28). This case arises out of construction currently under-way at the Cleveland Hopkins Internation-al Airport. Specifically, this case focuses on the "dredge or fill" permit issued under the Clean Water Act in conjunction with the construction. For the following rea-sons, defendants' Motion is GRANTED.

### FACTS

#### The Parties

Plaintiff, City of Olmsted Falls (hereaf-ter "Olmsted Falls"), is a municipal corpo-ration located near the Cleveland Hopkins International Airport (hereafter "Air-port"). (Compl.[1] ¶ 2). Plaintiff, Marvin Hirschberg, is an individual resident of Olmsted Falls. (Compl.¶ 4).

Plaintiffs bring this action against seven defendants.

Defendant, United States Environmen-tal Protection Agency (hereafter "USE-PA"), is the federal agency responsible for oversight of the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.* (commonly and hereafter referred to as "Clean Water Act"). (Comp.¶ 5). Defen-dant, Christine Todd Whitman, is the Ad-ministrator of the USEPA. (Compl.¶ 6). Defendant, Thomas Skinner, is the Re-gional Administrator of the USEPA. (Compl.¶ 7). These three defendants are hereafter collectively referred to as the "USEPA Defendants."

Defendant, Department of the Army, is an agency of the federal government re-sponsible for the issuance of dredge and fill permits pursuant to Clean Water Act Section 404. (Compl.¶ 8). Defendant, Thomas E. White, is the Secretary of the Army. (Compl.¶ 9). Defendant, Depart-ment of the Army Corps of Engineers (hereafter "Corps"), is a federal agency of

---

1. All references to "Compl." refer to the First Amended Verified Complaint.

the Army possessing direct authority for the issuance or denial of Section 404 Permits. (Compl.¶ 10). Defendant, Glen R. Dewillie, is the District Engineer for the Army Corps of Engineer's Buffalo District. These four defendants are hereafter collectively referred to as the "Corps Defendants."

In addition to these seven defendants, plaintiffs named ten Doe defendants.

**The Dispute**

For the purpose of ruling on defendants' Motion, the allegations in the First Amended Complaint are presumed true. Moreover, it appears from the briefs that the facts of this case are largely undisputed.

This dispute arises out of the ongoing construction at the Airport. In March 1999, the City of Cleveland (hereafter "Cleveland") submitted to the Federal Aviation Administration (hereafter "FAA") an Airport Master Plan Update outlining the proposed expansion and redesign at the Airport. (Compl.¶ 16). Completion of the Airport project will result in the culverting of 5,400 feet of Abram Creek and an additional 2,500 feet of its tributaries, as well as adjacent wetlands. (Compl.¶ 16).

In October 1999, the FAA issued a draft environmental impact statement (hereafter "DEIS"). Plaintiffs submitted comments to the FAA indicating their dissatisfaction with the treatment of water quality issues in the DEIS. (Compl.¶ 17). In addition, on February 1, 2000, the Ohio Environmental Protection Agency (hereafter "OEPA") informed the FAA that OEPA did not agree with Cleveland's "proposed preferred alternative" based on the information contained in the DEIS. (Compl.¶ 18). On June 5, 2000, the FAA released the final environmental impact statement (hereafter "FEIS") maintaining the "preferred alternative". (Compl.¶ 19).

In approximately July 2000, Cleveland applied for a "dredge or fill permit" pursuant to Section 404 of the Clean Water Act, 33 U.S.C. § 1344, (hereafter "Section 404 Permit"). (Compl.¶ 20). In addition, Cleveland applied to the OEPA for state certification as required by Section 401 of the Clean Water Act, 33 U.S.C. 1341 (hereafter "Section 401 Application").[2] (Compl.Ex. G).

OEPA commented on Cleveland's Section 401 Application on October 3, 2000, and indicated that Cleveland's application for certification did not adequately address proposed alternatives. Accordingly, on October 30, Cleveland submitted a revised Section 401 Application. (Compl.¶ 23).

On November 29, 2000, USEPA sent a letter to the Corps indicating its position that Cleveland's Section 401 Application failed to adequately address alternatives to the project. The USEPA recommended that the Corps withhold approval of the project until Cleveland responded to these issues.

Over the course of the next few months, OEPA issued a public notice concerning Cleveland's Section 401 Application, held a public hearing and accepted comments from the public to assist the Director of the OEPA in handling Cleveland's Section 401 Application. (Compl.¶ 27).

On March 21, 2001, the USEPA sent a letter to the Corps and reiterated its concerns regarding the project. The USEPA further indicated that it believed the project should not be authorized if further impairment of Abram Creek would result. (Compl. ¶ 28; Compl. Ex. L).

---

**2.** The requirements of Section 401 must be satisfied prior to issuance of a Section 404 permit.

On April 13, 2002, the Director of the OEPA sent a letter to the Corps indicating that Ohio waived its authority to act on the Section 401 Application. (Compl.¶ 30).

Thereafter, on May 18, 2001, the Corps issued the Section 404 Permit to Cleveland. (Compl.¶ 32). Construction at the Airport began on May 20, 2001. (Compl.¶ 33).

On May 13, 2001, Olmsted Falls appealed the OEPA Director's decision to waive its authority to act on Cleveland's Section 401 Application. (Compl.¶ 31). On June 11, 2002, the Ohio Environmental Review Appeals Commission (hereafter "ERAC") ruled that the OEPA Director's "action" of waiving its authority to act on the Section 401 Application is not permitted under Ohio law. (Compl.¶ 35). Subsequent to the filing of defendants' Motion in this action, the Ohio Court of Appeals for the 10th District reversed ERAC's ruling, holding that plaintiffs did not have standing to appeal the issuance of the waiver by the OEPA Director. *See City of Olmsted Falls v. Jones,* 152 Ohio App.3d 282, 787 N.E.2d 669 (2003).

Olmsted Falls contacted the defendants requesting that the Section 404 Permit be revoked because the waiver issued by the OEPA Director violates Ohio law and, accordingly, Section 401 of the Clean Water Act was not satisfied prior to issuance of the Section 404 Permit. (Compl.¶¶ 36–39). The defendants refused. (Compl.¶¶ 39–40).

**Procedural History**

The issues before this Court were originally raised in *City of Olmstead Falls v. U.S. Environmental Protection Agency,* 233 F.Supp.2d 890 (N.D.Ohio 2002) (hereafter "Olmsted Falls I"). That case was dismissed by the Court for lack of subject matter jurisdiction. Plaintiffs then filed the current action based on similar alleged misconduct. Defendants filed a motion to dismiss the Complaint and, in lieu of opposing defendants' motion, plaintiffs filed the first amended complaint asserting four claims for relief. Count One asserts a claim under the Clean Water Act. Count Two asserts a claim for declaratory relief. Count Three asserts a claim under the federal mandamus statute, 28 U.S.C. § 1361. Count Four seeks preliminary and permanent injunctive relief. Defendants move to dismiss the first amended complaint in part, and plaintiffs oppose defendants' Motion.

The EPA Defendants challenge this Court's subject matter jurisdiction over the claims filed against them. The Corps Defendants argue that, to the extent the claims filed against them pertain to their reliance on the OEPA Director's waiver, the claims fail to state a claim for which relief may be granted. Each argument will be addressed in turn.

**1. The USEPA Defendants**

***STANDARD OF REVIEW***

When a court's subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party seeking to invoke jurisdiction bears the burden of proof. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Rogers v. Stratton,* 798 F.2d 913, 915 (6th Cir.1986). This burden is not onerous. *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1248 (6th Cir. 1996). The party need only show that the complaint alleges a substantial claim under federal law. *Id.*

A 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994). Facial attacks question the sufficiency of the jurisdictional allegations in the complaint. *Id.* Thus,

those allegations must be taken as true and construed in the light most favorable to the nonmoving party. *Id.* Factual attacks, however, challenge the actual fact of the court's jurisdiction. *Id.* In such cases, the truthfulness of the complaint is not presumed. *McGee v. East Ohio Gas Co.,* 111 F.Supp.2d 979, 982 (S.D.Ohio 2000) (citing *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320 (6th Cir.1990)). Instead, the Court may weigh any evidence properly before it. *Morrison v. Circuit City Stores, Inc.,* 70 F.Supp.2d 815, 819 (S.D.Ohio 1999) (citing *Ohio Nat'l,* 922 F.2d 320; *Rogers,* 798 F.2d 913).

When presented with a facial attack, the non-moving party "can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical,* 89 F.3d at 1248. Thus, such a motion will be granted only if, taking as true all facts alleged in the complaint, the Court is without subject matter jurisdiction to hear the claim. *Matteson v. Ohio State University,* 2000 WL 1456988 *3 (S.D.Ohio Sept. 27, 2000).

### ANALYSIS

### The Clean Water Act Claim (Count One)

The USEPA Defendants argue that this Court lacks jurisdiction over plaintiffs' Clean Water Act claim because the Administrative Procedure Act's waiver of sovereign immunity does not apply in this case. Specifically, the USEPA Defendants argue that plaintiffs fail to allege the existence of a nondiscretionary duty. According to the USEPA Defendants, the decision of whether to veto a permit issued by the Corps Defendants is committed to agency discretion by law and, thus, is unreviewable by this Court. In addition, the USEPA Defendants argue that any failure on the part of the USEPA Defendants to veto the Section 404 permit does not constitute

final agency action, rendering review by this Court improper.

Plaintiffs argue that the Section 404(b)(1) Guidelines, 40 C.F.R. § 230, create a nondiscretionary duty on the part of the USEPA Defendants. Plaintiffs also appear to allege that the USEPA Defendants' veto power under Section 404(c), 33 U.S.C. § 1344(c), is nondiscretionary. Plaintiffs further argue that final agency action exists as a result of the failure of the USEPA Defendants to intervene in the Section 404 process pursuant to Section 404(c).

■ As this Court recognized in *Olmsted Falls I,* the Administrative Procedure Act grants a court jurisdiction to review the actions taken by an agency of the federal government "except to the extent that(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. 701(a). Thus, where a plaintiff challenges a nondiscretionary act of a federal agency, judicial review is appropriate under the Administrative Procedure Act. *Friends of Crystal River v. United States Env. Prot. Agency,* 35 F.3d 1073 (6th Cir.1994).

This Court must decide whether plaintiffs have alleged the violation of a nondiscretionary duty on the part of the USEPA Defendants. Specifically, this Court must determine whether either Section 404(c) or the 404(b)(1) Guidelines sets forth a nondiscretionary duty. The Court will address each of these provisions in turn.

*Section 404(c)*

■ Section 404(c) affords the Administrator of the EPA the authority to veto decisions made by the Corps with respect to the issuance of Section 404 permits. That section, provides in relevant part,

> The Administrator is authorized to prohibit the specification (including the withdrawal of specification) of any de-

fined area as a disposal site, and he is authorized to deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever he determines...that the discharge of such materials into such area will have an unacceptable adverse effect.... Before making such determination, the Administrator shall set forth in writing and make public his findings and his reasons for making any determination under this subsection.

33 U.S.C. § 1344(c).

■ Upon review of this statute, the Court finds that the USEPA Defendants' veto power as set forth in Section 404(c) is discretionary. On the face of the statute, Congress *authorized* the Administrator to veto Corps decisions to issue Section 404 permits. There is nothing mandatory on the face of the statute requiring the Administrator to exercise his veto power. *See Preserve Endangered Areas of Cobb's History, Inc. v. United States Army Corps of Engineers*, 87 F.3d 1242, 1249 (11th Cir.1996) ("By statute, the Administrator is authorized rather than mandated to overrule the Corps.") (hereafter "P.E.A.C.H."). As the *P.E.A.C.H.* court noted, this conclusion is buttressed by a review of the regulations outlining the veto procedures to be followed by the Administrator in exercising his veto power. *See* 40 C.F.R. § 231.1(a) ("Under section 404(c), the Administrator *may* exercise a veto over the specification by the U.S. Army Corps of Engineers or by a state of a site for the discharge of dredged or fill material.") (emphasis added). *See also* 40 C.F.R. 231.3 ("If the Regional Administrator has reason to believe...that an 'unacceptable adverse effect' could result...he *may* initiate [certain actions].")(emphasis added). Because of the obvious discretionary nature of the USEPA Defendants' veto power under Section 404(c), the Court finds that it lacks jurisdiction to review the USEPA Defendants' decision not to veto the Corps Defendants' issuance of Cleveland's Section 404 Permit.

*Section 404(b)(1) Guidelines*

■ Plaintiffs argue that the Section 404(b)(1) Guidelines are nondiscretionary in nature and that the USEPA Defendants' failure to comply with the guidelines is reviewable by this Court. The USEPA Defendants argue that the Section 404(b)(1) Guidelines apply to the issuance of Section 404 permits, not the USEPA Defendants' veto power. Because the USEPA Defendants are not charged with the responsibility of issuing Section 404 permits, compliance with these provisions is not required of these defendants.

Upon review of the Section 404(b)(1) Guidelines, the Court finds that these guidelines do not impose a nondiscretionary duty on the part of the USEPA Defendants. The Section 404(b)(1) Guidelines govern the specification of disposal sites for dredge and fill permits pursuant to Section 404. Section 404(b), however, provides,

> Subject to subsection (c) of this section, each such disposal site shall be specified by the *Secretary* (1) through the application of guidelines developed by the Administrator, in conjunction with the Secretary....

33 U.S.C. 1344(b) (emphasis added).

Thus, on its face Section 404(b) places duties on the Secretary with regard to the specification of disposal sites. "Secretary" is defined as Secretary of the Army, acting through the Chief of Engineers. 33 U.S.C. § 1344(d). Section 404(b) places no obligation on the USEPA Defendants. Instead, Section 404(b)(1) places an obligation on the Secretary to specify each disposal site through an application of

guidelines developed by the Administrator. Those guidelines are contained in 40 C.F.R. Part 230 and are captioned "Section 404(b)(1) Guidelines for Specification of Disposal Sites For Dredged of Fill Material". *See* 40 C.F.R. § 230.2(a) ("These Guidelines have been developed by the Administrator of the Environmental Protection Agency in conjunction with Secretary of the Army acting through the Chief of Engineers under section 404(b)(1) of the Clean Water Act."). Accordingly, it is readily apparent from the face of the guidelines that they apply to Section 404(b), which governs the Secretary's obligation to specify sites for disposal.

This Court agrees with the USEPA Defendants' argument that plaintiffs appear to confuse 40 C.F.R. Part 230, which governs the standards for site specification under Section 404(b)(1), with 40 C.F.R. Part 231, which governs the EPA's veto authority. Plaintiffs have provided no persuasive reason to apply the 404(b)(1) Guidelines to the USEPA Defendants' power to deny or restrict a Section 404 permit pursuant to Section 404(c).[3]

Because Section 404(b) does not place any obligation on the USEPA Defendants, the Court finds that the 404(b)(1) Guidelines do not impose a nondiscretionary duty on these defendants.

*Final Action/Pre–Enforcement Jurisdiction*

Because this Court has determined that it lacks jurisdiction over the USEPA Defendants based on plaintiffs' failure to allege the existence of a nondiscretionary duty, the Court need not determine whether the failure to veto a Section 404 Permit is a "final action" or whether this court lacks jurisdiction absent a judicial enforcement action.

**Declaratory Judgment Act/Federal Mandamus Statute (Counts Two and Three)**

The USEPA Defendants argue that neither the Declaratory Judgment Act nor the Federal Mandamus Statute contains a waiver of sovereign immunity sufficient to afford this Court with jurisdiction. Plaintiffs agree that neither statute "contains the requisite waiver of sovereign immunity." Instead, plaintiffs rely on the waiver of immunity contained in the Administrative Procedure Act. As set forth above, however, this Court has already determined that the Administrative Procedure Act does not afford this Court with jurisdiction over the USEPA Defendants. Accordingly, based on plaintiffs' concession that neither the Declaratory Judgment Act nor the Federal Mandamus Statute contains an applicable waiver of sovereign immunity, this Court finds that it lacks jurisdiction over the claims against the USEPA Defendants.[4]

**2. The Corps Defendants**

*STANDARD OF REVIEW*

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal

---

**3.** Plaintiffs' Complaint also alleges that the USEPA Defendants failed to perform a non-discretionary duty by "granting or allow[ing] to be granted" a Section 404 permit in violation of state water quality standards. (Compl.¶ 61). This Court finds that this allegation is a challenge to the USEPA Defendants' veto authority under Section 404(c), which the Court has determined is a discretionary duty. Although plaintiffs used the word "granting," as if to suggest that the USEPA granted the permit, the factual allegations contained in the Complaint, as well as federal law, clearly indicate that the USEPA Defendants do not issue Section 404 permits.

**4.** As this Court noted in *Olmsted Falls I*, a request for preliminary and permanent injunctive relief does not by itself afford this Court with jurisdiction. 233 F.Supp.2d at 905 n.15.

Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir.1999). The complaint is not to be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Hammond v. Baldwin,* 866 F.2d 172, 175 (6th Cir.1989). Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99. However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman (In Re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993).

"In practice, a...complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101 (7th Cir.1984)). Legal conclusions and unwarranted factual inferences are not accepted as true, nor are mere conclusions afforded liberal Rule 12(b)(6) review. *Fingers v. Jackson–Madison County General Hospital District,* 101 F.3d 702 (6th Cir.1996), *unpublished.* Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489–490 (6th Cir.1990).

### ANALYSIS

The Corps Defendants argue that plaintiffs fail to state a claim for which relief may be granted with respect to their reliance on the OEPA Director's waiver of Section 401 certification. Specifically, the Corps Defendants argue that they did not act arbitrarily, capriciously or contrary to law in relying on the OEPA Director's waiver. In addition, the Corps Defendants point out that even plaintiffs themselves initially indicated that the Corps Defendants properly relied on the OEPA Director's waiver in issuing the Section 404 Permit.

Plaintiffs argue that the Section 404(b)(1) Guidelines impose nondiscretionary duties on the part of the Corps Defendants. In addition, plaintiffs argue that any initial statements made by counsel indicating that the Corps Defendants properly relied on the OEPA's waiver are legal opinions and, as such, are not binding on plaintiffs. Finally, plaintiffs argue that this Court may not dismiss Count One because, in addition to pleading that the Corps Defendants improperly relied on the OEPA's waiver, Count One also alleges improper actions by these defendants, which are not challenged in the motion to dismiss. According to plaintiffs, a partial dismissal of Count One would be inappropriate.

Section 401(a)(1) provides, in part,

Any applicant for a Federal license or permit to conduct any activity, including, but not limited to, the construction or operation of facilities, which may result in any discharge into the navigable waters, shall provide the licensing or permitting agency a certification from the State in which the discharge originates...that any such discharge will comply with [certain provisions] of this title..... If the State...fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal application. No license or permit shall be

granted until the certification required by this section has been obtained or has been waived as provided in the preceding sentence. . . .

33 U.S.C. 1341(a)(1).

The regulation governing the procedures to be taken by the Corps Defendants in processing permits requiring a Section 401 permit provides, in part,

No permit will be granted until required certification has been obtained or has been waived. A waiver may be explicit, or will be deemed to occur if the certifying agency fails or refuses to act on a request for certification within sixty days after receipt of such a request unless the district engineer determines a shorter or longer period is reasonable for the state to act. . . .

33 C.F.R.325.2(b)(ii).

Plaintiffs argue that certain provisions of the Ohio Revised Code and the Ohio Administrative Code do not allow the State to issue a waiver with respect to a Section 401 application and instead require that the OEPA either "certify, deny, modify or revoke" the application. Plaintiffs also point out that ERAC issued an opinion invalidating the OEPA Director's waiver, although plaintiffs recognize that ERAC's decision has been overturned on appeal, albeit on the issue of standing. According to plaintiffs, the Corps Defendants' reliance on the OEPA Director's waiver, which plaintiffs claim is invalid, is imper-

missible and constitutes a violation of Section 401(a)(1) and 33 C.F.R. 325.1(d)(4).[5]

■ This Court disagrees. On its face, Section 401(a)(1) and its supporting regulations, allow an applicant for a Section 404 permit to submit an express waiver from the state in order to satisfy Section 401. "The legislative purpose of the certification mechanism. . .is to assure that Federal licensing or permitting agencies cannot override State water qualify requirements." *Environmental Defense Fund, Inc. v. Alexander*, 501 F.Supp. 742, 771 (N.D.Miss.1980) (citing 1972 U.S.C.C.A.N. 3668, 3735 (1972)). However, Congress also afforded the Corps the right to accept a state's waiver of the certification process, either explicitly or by operation of time. Based on a plain reading of the statute, together with a review of the legislative history, this Court finds that Section 401 requires that the Corps Defendants afford the state the right to pass judgment on a Section 401 application. There is no explicit or implicit requirement on the part of the Corps Defendants to ensure that the state's certification process complies with the state's own guidelines, including the authority of the state to issue a waiver. To do so would place an undue burden on the Corps and would ultimately allow the Corps to challenge or override the state's certification process and substitute its own judgment for that of the state agency charged with administering Section 401 certifications.[6] In this case, it is undisput-

---

5. Plaintiffs argue that this Court cannot dismiss any part of the Complaint on the grounds that Rule 8(e)(2) allows for pleading in the alternative. This Court, however, sees no reason why streamlining the issues in this action would be impermissible. Thus, while the Court recognizes that no claim for relief will be dismissed, the Court will proceed to determine whether the Corps Defendants' reliance on the waiver can form the basis of plaintiffs' claims.

6. For example, under plaintiffs' theory, to the extent the Corps Defendants believe a state misapplied its own guidelines in denying a certification, the Corps would have the authority to interpret and reevaluate the decision and ultimately issue a Section 404 permit. Alternatively, to the extent plaintiffs are correct that Ohio law does not permit a waiver, the Corps would be in an impossible situation if the OEPA Director simply failed to act. Given that a failure to is not allowed (according to plaintiffs), the Corps would be "accept-

ed that the Corps Defendants received an express waiver from the Director of OEPA waiving Ohio's right to act on Cleveland's Section 401 Application. This Court finds that as a matter of law, the Corps Defendants cannot be liable for relying on the waiver issued by the Director of OEPA, even if it is ultimately determined that the Director lacked authority under Ohio law to issue the waiver.

■ Moreover, even if liability could be premised on the Corps Defendants' reliance on the waiver, the Court finds that plaintiffs have failed to state facts sufficient to support a claim that the Corps Defendants acted arbitrarily, capriciously or contrary to law in relying on the waiver. Plaintiffs allege that the Corps Defendants "knew or had an affirmative obligation to know" that Ohio did not allow the Director of the OEPA to waive Section 401 certification. To support this claim, plaintiffs allege that,

- EPA apprised them of Ohio law in a November 29, 2000 letter;

- The Corps Defendants met with representatives from Cleveland at which time a discussion occurred about the Director of OEPA's intention to grant a waiver; and

- The Corps Defendants have an obligation to know the affirmative requirements and restrictions of state law

before accepting a waiver or certification.

(Compl.¶ 53).

This Court finds that the two factual allegations are insufficient to state a claim that the Corps exercised its agency discretion in an arbitrary fashion. Contrary to plaintiffs' citation to the November 29 EPA letter, that letter contains nothing to suggest that the Director of the OEPA lacks authority to issue an express waiver. Moreover, plaintiffs' allegation regarding the discussion between Cleveland and the Corps Defendants simply states that the parties discussed OEPA's intention to grant a waiver. It does not suggest that the parties discussed OEPA's *authority* to issue a waiver.[7] Plaintiffs' third contention, that the Corps Defendants are obligated to know Ohio law, is a legal conclusion that this Court need not accept as true for purposes of ruling on a motion to dismiss. As this Court has already determined, the Corps Defendants are not charged with knowing the affirmative requirements of a particular state agency to issue a waiver. Moreover, this Court cannot say that at the time the Corps Defendants accepted the waiver, Ohio law was so clear that the Corps Defendants acted "contrary to law" in accepting the waiver. Thus, even if the Corps Defendants had an obligation to research the authority of the OEPA Director to issue a waiver, the Court finds that plaintiffs fail to allege facts sufficient to state a claim against the Corps Defendants based on their reliance on the waiver.[8]

ing" Ohio's waiver by operation of time as required by Section 401 in violation of Ohio law.

7. Plaintiffs also allege that the Public Notice issued by the OEPA on December 8, 2000, indicates that "No exclusions or waivers, as outlined by Paragraph 3745–1–05(D) of the Antidegredation Rule...apply or may be granted by the Director of Ohio EPA." That provision, however, addresses the OEPA Director's right to waive the submittal and re-

view process required by the Antidegredation statute. Because no waiver or exclusion applied under that statute, the OEPA had an obligation to comply with Ohio Ad.Code Chs. 3745–32 through 3745–47.

8. The Corps Defendants attempt to support their claim that they did not act arbitrarily or capriciously in accepting the OEPA Director's waiver by citing to letters from plaintiffs, which indicate that plaintiffs are not challenging the Corps Defendants' reliance on the

## CONCLUSION

For the forgoing reasons, this Court finds that it lacks jurisdiction over the USEPA Defendants. Accordingly, defendants, United States Environmental Protection Agency, Christine Todd Whitman and Thomas Skinner are hereby dismissed. In addition, the Court finds that plaintiffs fail to state a claim for which relief may be granted as to the Corps Defendants to the extent the Complaint asserts that the Corps Defendants wrongfully relied on the waiver issued by the Director of the OEPA. However, all claims against the Corps Defendants remain pending.

IT IS SO ORDERED.

waiver and further indicating that the Corps Defendants properly relied on the waiver. These documents are referred to in the Complaint but are not attached as Exhibits. According to the Corps Defendants, the Court may consider these documents. Plaintiffs argue that the statements are legal opinions of counsel and should not be treated as factual admissions. This Court has not relied on the letters in reaching its conclusion and, accordingly, will not consider the "admissibility" of these documents.