[Cite as *Argote-Romero v. LAZ Parking LTD., L.L.C.*, 2025-Ohio-400.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Graciela Argote-Romero, | : | |
| Plaintiff-Appellant, | : | No. 24AP-250 |
| | | (C.P.C. No. 23CV-4469) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| LAZ Parking LTD., LLC et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on February 6, 2025

**On brief:** *Whitt Sturtevant LLP*, and *Mark A. Whitt*, for appellant.
**Argued:** *Mark A. Whitt.*

**On brief:** *Gordon Rees Scully Mansukhani, LLP, Tyler G. Tarney*, and *Andrea C. Hofer*, for appellees LAZ Parking LTD., LLC and LAZ Parking Midwest, LLC.

**On brief**: *Zeiger, Tigges & Little LLP*, and *Marion H. Little, Jr.* for appellee Area District CA I, LLC.[1]
**Argued:** *Marion H. Little, Jr.*

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Plaintiff-appellant, Graciela Argote-Romero, appeals from the March 13, 2024 decision and entry of the Franklin County Court of Common Pleas granting the motion for judgment on the pleadings filed by Arena District CA I, LLC ("ADC"), which was later joined and adopted by defendants-appellees, LAZ Parking LTD., LLC and LAZ Parking Midwest, LLC (collectively referred to as "LAZ"). For the reasons that follow, we affirm.

---

[1] ADC and LAZ filed a joint brief in this case.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} ADC is the owner of Parks Edge Lane, a street located off Neil Avenue in Columbus, Ohio. (Compl. at ¶ 3, 8.) The street provides vehicle access and metered parking near the Parks Edge Condominiums. (Compl. at ¶ 9.) Vehicle parking on Parks Edge Lane is subject to the posted restrictions on signs and parking meters, which provide "payment is required during the hours of 7:00 a.m. to 10:00 p.m., seven days per week" at a rate of "1.50 per hour for a maximum of 2 hours." (Compl. at ¶ 12, 26.)[2] LAZ Parking Midwest, LLC monitors the meters on Parks Edge Lane for violations. (Compl. at ¶ 13.) Individuals who leave their vehicles parked at an expired meter receive a printed violation demanding payment of a fine. "If these measures prove insufficient to secure payment, the Defendants [place an immobilization device ("boot") on] the owner's vehicle until all outstanding fines, plus an additional $125 boot removal fee, are paid." (Compl. at ¶ 13.)

{¶ 3} The complaint provides that the appellant incurred parking citations on December 8, 2022, December 22, 2022, and December 23, 2022 for alleged non-payment of a meter on Parks Edge Lane. (Compl. at ¶ 14, 20.)[3] The parking violation documents directed the appellant to LAZ's website where she could "pay or appeal" the violation within a certain number of days. (Compl. at ¶ 13.) By letter dated December 28, 2022, LAZ informed the appellant that her fine of $105 for multiple parking violations remained unpaid. (Compl. at ¶ 46.)

{¶ 4} On the evening of March 2, 2023, at approximately 10:00 p.m., the appellant parked at a meter on Parks Edge Lane. (Compl. at ¶ 15.) The next morning, the appellant discovered that a boot was placed on her driver's side front wheel. (Compl. at ¶ 16.) An "immobilization notice" and two orange envelopes were placed on her vehicle's windshield. (Compl. at ¶ 16.) The appellant paid $365 for all outstanding fines on the afternoon of March 3, 2023. (Compl. at ¶ 21.) Upon returning to Parks Edge Lane that evening, the appellant found that the boot was removed from her vehicle. (Compl. at ¶ 21.)

---

[2] The appellant also alleges that there are additional signs on Parks Edge Lane that read "2 Hour Parking." (Compl. at ¶ 11.)

[3] The appellant, however, does not concede that she overstayed the meter on these prior occasions. (Appellant's Brief at 6.) The appellant, however, does acknowledge that she did not pay for parking on March 3, 2023, and that appellees have alleged three prior violations. (Appellant's Brief at 7.)

{¶ 5}   On June 22, 2023, the appellant filed a complaint against ADC and LAZ arguing that the appellees should be held civilly liable, under R.C. 2307.60, for the following criminal offenses: theft of a motor vehicle (Count One); theft of money (Count Two); extortion (Count Three); coercion (Count Four); criminal usury (Count Five); pattern of corrupt activity (Count Six); conspiracy (Count Seven); complicity (Count Eight); and sham legal process (Count Nine).  LAZ and ADC filed answers on July 25 and June 26, 2023, respectively.

{¶ 6}   On August 4, 2023, ADC filed a motion for judgment on the pleadings.  On August 14, 2023, LAZ filed a notice that they were joining and adopting ADC's prior motion. On August 18, 2023, the appellant filed a memorandum in opposition to the motion for judgment on the pleadings.  A reply brief was filed on September 1, 2023.  On March 13, 2024, the trial court granted the motion for judgment on the pleadings in its entirety.

{¶ 7}   The appellant filed a timely appeal.

## II.  ASSIGNMENT OF ERROR

{¶ 8}   The appellant assigns the following as trial court error:

> In entering judgment for Appellees on the pleadings, the trial court misapplied Civ.R. 12(C), made unsupported findings of fact, and misapplied the law.

## III. STANDARD OF REVIEW

{¶ 9}   A motion for judgment on the pleadings is governed by Civ.R. 12(C), which provides "[a]fter the pleadings are closed but within such times as not to delay the trial, any party may move for judgment on the pleadings."  This court has characterized a motion for judgment on the pleadings " 'as a belated Civ.R. 12(B)(6) motion for failure to state a claim upon which relief can be granted.' "  *Bailey v. Ohio Dept. of Dev. Disabilities*, 10th Dist. No. 23AP-542, 2024-Ohio-1696, ¶ 7, quoting *Tran v. State*, 10th Dist. No. 09AP-587, 2009-Ohio-6784, ¶ 10.  "Under Civ.R. 12(C), dismissal is appropriate where a court construes as true all material allegations in the complaint, with all reasonable inferences to be drawn therefrom in favor of the non-moving party and finds beyond doubt that the non-moving party could prove no set of facts in support of his claim that would entitle him to relief." *Rhoads v. Olde Worthington Business Assn.*, 10th Dist. No. 23AP-324, 2024-Ohio-2178, ¶ 32, citing *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). A Civ.R. 12(C) motion requires a determination that no material factual issues exist and

that the moving party is entitled to judgment as a matter of law. *Rhoads* at ¶ 31, citing *Midwest* at 570.

{¶ 10} We consider the trial court's resolution of a motion for judgment on the pleadings under a de novo standard of review. *Rhoads* at ¶ 31, citing *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App.3d 801, 807 (10th Dist.2000). "Thus, we are restricted, as was the trial court, to the allegations in the pleadings, as well as material incorporated by reference or attached as exhibits to those pleadings." *Chen v. Shie-Ming Hwang*, 10th Dist. No. 14AP-535, 2014-Ohio-5863, ¶ 17, citing *Curtis v. Ohio Adult Parole Auth.*, 10th Dist. No. 04AP-1214, 2006-Ohio-15, ¶ 24.

## IV. LEGAL ANALYSIS

### A. The Appellant's Sole Assignment of Error

{¶ 11} The appellant contends that the trial court erred by granting LAZ's motion for judgment on the pleadings as to all nine causes of action asserted in the complaint. There is no dispute that the appellant's "car was parked at an expired meter on [the appellees'] property" on March 3, 2023. (Aug. 18, 2023 Pl.'s Memo in Opp. at 1; Appellant's Brief at 7.) While the appellant does not concede that she overstayed the meter on three prior occasions, there is also no dispute that the appellant had outstanding fines for three alleged violations in December 2022. (Compl. at ¶ 20; Appellant's Brief at 6.) Finally, there is no dispute that the appellant's vehicle was booted because of the alleged violations and the boot was removed after all fines were paid.

### 1. R.C. 2307.60

{¶ 12} Pursuant to R.C. 2307.60(A)(1), "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law." Stated another way, unless otherwise prohibited by law, R.C. 2307.60 provides a civil remedy for damages resulting from a criminal act. *Harris v. Cunix*, 10th Dist. No. 21AP-13, 2022-Ohio-839, ¶ 4, fn. 1, citing *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, ¶ 13. The Supreme Court of Ohio has found that the plain language of R.C. 2307.60 does not require proof of an underlying criminal conviction as a prerequisite to civil liability. *Buddenberg v. Weisdack*, 161 Ohio St.3d 160, 2020-Ohio-3832, ¶ 11; *see also Seymour v. Miller*, S.D.Ohio No. 2:21-cv-313, 2022 U.S. Dist. LEXIS 4091, *24 (Jan. 10, 2022). As the *Buddenberg* court explained, "crimes can be committed without a

conviction. They often are. The fact that a person's actions subject him or her to prosecution in no way establishes that he or she will in fact *be* prosecuted." (Emphasis sic.) *Buddenberg* at ¶ 13. It is not uncommon for an individual to commit an unlawful act, be prosecuted, and yet evade conviction. *Id.*

{¶ 13} In the appellant's complaint, she has alleged nine distinct claims against the appellees. For harmony of analysis, we will address the appellant's various causes of action out of order.

### 2. Theft

{¶ 14} The appellant first argues that the trial court erred by granting the appellees' motion for judgment on the pleadings as to her claims of theft of a motor vehicle (Count One) and money (Count Two). R.C. 2913.02(A) provides:

> No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> (1) Without the consent of the owner or person authorized to give consent;
>
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>
> (3) By deception;
>
> (4) By threat;
>
> (5) By intimidation.

{¶ 15} "Deprive" is defined as:

> (1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;
>
> (2) Dispose of property so as to make it unlikely that the owner will recover it;
>
> (3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

R.C. 2913.01(C).

### a. Theft of a Motor Vehicle (Count One)

{¶ 16} The appellant alleges that the appellees engaged in the theft of a motor vehicle, in violation of R.C. 2913.02, by knowingly obtaining or exerting control over the appellant's vehicle by placing a boot on her wheel until she paid all alleged fines and boot

fees.  The central point of dispute is whether the act of placing a boot on the appellant's vehicle constitutes "obtain[ing] or exert[ing] control over" it for the purpose of "depriv[ing]" her of its use within the meaning of R.C. 2913.02(A)(1).  Both parties heavily rely on *State v. Hope*, 9 Ohio App.3d 65 (8th Dist.1983) in support of their positions.  A brief review is instructive.

{¶ 17}  In *Hope*, a newspaper carrier witnessed the defendant jump out of a vehicle parked in the driveway of the victim's residence.  *Id.* at 65.  The newspaper carrier pursued and ultimately captured the defendant.  *Id.*  Law enforcement discovered that the vehicle was not running and the "lock holding the steering wheel and brake pedal together had been pried off, and the ignition switch had been popped off."  *Id.*  The defendant was convicted of grand theft of a motor vehicle.  *Id.*  On appeal, the Eighth District Court of Appeals considered "at what point does a person who breaks into a car to steal it 'obtain or exert control over' the vehicle."  *Id.* at 66.  Relying on our decision in *State v. Fann*, 10th Dist. No. 75AP-431, 1976 Ohio App. LEXIS 8138 (Mar. 2, 1976)[4], the *Hope* court found the defendant had not completed the theft as he had not "rendered the vehicle immediately capable of movement."  *Hope* at 66.  Other Ohio courts have applied *Hope* under analogous circumstances.  *See, e.g., State v. Thompson*, 6th Dist. No. L-15-1199, 2016-Ohio-7343, ¶ 11, 13 (concluding that the defendant knowingly exerted control over a vehicle when he sat in the driver's seat with the engine running and shifted the gear from park to neutral rendering the vehicle "immediately capable of movement"); *State v. Muchewicz*, 8th Dist. No. 58228, 1991 Ohio App. LEXIS 1029, *8 (Mar. 14, 1991) (finding the defendant completed the act of theft under *Hope* when he restarted the vehicle rendering it "immediately capable of movement").

{¶ 18}  Upon review, we find the analysis in *Hope,* as well as more recent decisions out of our sister districts, persuasive.  Under the facts alleged in the complaint, we cannot say that the placement of a boot on the appellant's vehicle meets the requisite level of

---

[4] In *Fann*, the defendant was found guilty, pursuant to a jury trial, of theft of a trailer with over $20,000 of goods in violation of R.C. 2913.02.  In relevant part, the state presented evidence that defendant had backed a van up to the trailer and attached the van to the trailer before being apprehended.  A co-defendant testified that the air hoses were not properly connected to the trailer, and they were apprehended before the trailer could be moved at all.  *Id*. at *3.  We ultimately reversed the judgment finding that found that if believed, the defendants were guilty of no more than attempted grand theft as the theft was not completed until the defendant had not obtained or exerted control of the vehicle.  *Id*. at *6.

obtaining or exerting control as it was never rendered "immediately capable of movement." In fact, placing a boot on the wheel of a vehicle has the opposite effect.

{¶ 19} The appellant contends that *Hope* is inapplicable because the true issue concerns the "deprivation" element of the offense. However, the *Hope* court dismissed this argument writing that the issue of "deprivation" concerns "at what point does a person who breaks into a car to steal it 'obtain or exert control over' the vehicle." (Internal citation omitted.) *Hope* at 66. The appellant's subsequent argument that the appellees' admission that they booted the vehicle to "restore it only upon payment of * * * consideration" satisfies the obtaining or exerting control element of the offense is equally unavailing. (Internal citation omitted.) (Appellant's Brief at 16.) The appellant's argument concerns what amounts to an alleged threat. Even if the appellant has satisfied the "threat" element, this does not resolve her lack of sufficient facts to meet the "obtain or exert control" requirement. To survive a Civ.R. 12(C) motion, the appellant's complaint must present sufficient facts to meet every element of the offense. *Rhoads.* 2024-Ohio-2178, at ¶ 32, citing *Sosic v. Stephen Hovancsek & Assocs., Inc.*, 8th Dist. No. 109993, 2021-Ohio-2592, ¶ 17 (under Civ.R. 12(C), "a well-pled complaint must include factual allegations going to each element of the claim, and conclusory statements without any factual allegations in support are insufficient"). Because the appellant has failed to adequately allege the "obtain or exert control" element of the offense, she has failed to plead all the necessary elements of theft of a motor vehicle.

{¶ 20} In the alternative, even if the appellant had asserted all the necessary elements in her complaint, we also find that the appellees acted under a privilege to protect their right to exclusive possession of Parks Edge Lane by placing a boot on the appellant's vehicle. This court has found that "[a] property owner has a privilege to use force to eject a trespasser." *Zhelezny v. Olesh*, 10th Dist. No. 12AP-681, 2013-Ohio-4337, ¶ 40, citing *Hartwig v. Robinson*, 3d Dist. No. 15-97-03, 1997 Ohio App. LEXIS 4906 (Oct. 9, 1997); 1 Restatement of the Law 2d, Torts, Section 77 (1965). The Second Restatement of Torts provides that "[t]he other's privilege to intrude upon land or chattels in the actor's possession protects h[er] from expulsion only during its proper exercise. As soon as the other has accomplished the purpose for which [her] entry is privileged, [s]he must leave the premises. If [s]he delays [her] departure, the possessor has the same privilege to expel [her]

as though [her] entry had been unprivileged." 1 Restatement of the Law 2d, Torts, Section 77, Comment D (1965).

{¶ 21} The appellant contends there is no common law privilege to expel a trespasser available in Ohio, and a property owner's remedies are limited by statute. To be sure, the General Assembly has exercised this authority through various statutes in certain contexts. As outlined in R.C. 4513.601, the legislature imposed certain conditions for the owner of private property to establish a private tow-away zone. Moreover, R.C. 4511.681 provides that private property owners may create conditions or regulations under which parking is permitted if certain statutory conditions are met. However, the Supreme Court has found that only the General Assembly may decide whether to abrogate common law property rights. *Columbia Gas Transmission, LLC v. Ohio Valley Coal Co.*, 2020-Ohio-6787, ¶ 22. We find that neither statute limits other remedies by a private property owner or, more specifically, abrogates a property owner's right to place a boot on a trespasser's vehicle to protect their property interests. There is no dispute that the appellees have an ownership interest as to Parks Edge Lane. There is also no dispute that on March 3, 2023, the appellant's vehicle was parked on Parks Edge Lane beyond the allowed period. (Appellant's Brief at 7.) As such, the appellees acted within the scope of their common law privilege to expel a trespasser from their property.

{¶ 22} Appellate courts out of North Carolina and Georgia have addressed similar questions as to a property owner's right to boot a trespasser's vehicle. In *Kirschbaum v. McLaurin Parking Co.*, 188 N.C. App. 782, 783 (2008), the plaintiff parked in Lot 11, a private parking area. "Plaintiff did not have a permit to park in Lot 11 and had no verbal or written agreement that he could park in Lot 11." *Id.* at 785. Upon notice from the authorized lessee of the occupied spot in Lot 11, a security guard, after investigating the matter, placed a boot on the plaintiff's vehicle. *Id.* The plaintiff was issued a "notice" with instructions to have the boot removed upon the payment of a $50 fee. The notice also provided the plaintiff with a telephone number and information regarding an appeal process. *Id.* at 786. The plaintiff subsequently filed a civil complaint concerning claims for interference and trespass to chattel, which the trial court dismissed. *Id.* at 786. Relevant to the instant case, the Court of Appeals of North Carolina recognized that the property owner was "privileged to attach that boot to plaintiff's car to protect their right to exclusive

possession of Lot 11." *Id*. at 787-88. The *Kirschbaum* court quoted 1 Restatement of the Law 2d, Torts, Section 260(1) (1965) in relevant part:

> [O]ne is privileged to commit an act which would otherwise be a trespass to a chattel or a conversion if the act is, or is reasonably believed to be, necessary to protect the actor's land or chattels or his possession of them, and the harm inflicted is not unreasonable as compared with the harm threatened.

**{¶ 23}** In *RCC Wesley Chapel Crossing, LLC v. Allen*, 313 Ga 69, 75 (2021), the plaintiff filed a claim on behalf of himself and putative class members against defendants for various causes of action based on an alleged practice of booting unauthorized vehicles. The Georgia Supreme Court considered "whether there is a common-law right that permits private property owners to immobilize vehicles that are not authorized to be on their property." *Id*. at 69. Relevant to the instant case, the *RCC Wesley* court found, "in Georgia, the common-law remedy of removing trespassing vehicles has been displaced, at least in part, by Georgia's towing statute, OCGA § 44-1-13, which provides specific guidelines for the removal and impoundment of vehicles in this state." *Id*. at 74.

**{¶ 24}** We find the decision in *Kirschbaum* more applicable to the facts of this case as well as existing Ohio law. Like the property owner in *Kirschbaum*, the appellees provided a phone number and information to have the boot removed and an appeal process. *Kirschbaum* at 788. From a statutory context, outside the limited contexts set forth previously, the Ohio General Assembly has not abrogated the common law privilege to allow property owners to protect their property against trespassers. The General Assembly is not presumed to have intended to abrogate a rule of common law unless expressly supported in a statute. *Columbia Gas Transmission* at ¶ 22 (finding it is the General Assembly that determines "whether the state is going to abrogate common-law property rights"). Conversely, we find *RCC Wesley* distinguishable as Georgia's towing statute has at least partially displaced the common law property right of removing trespassing vehicles. *RCC Wesley* at 74. Moreover, we cannot square the analysis in *RCC Wesley* with the language from the Second Restatement, as well as *Zhelezny*, that a property owner has the right to defend against trespass.

**{¶ 25}** The appellant, citing analysis from the Georgia Supreme Court, *see RCC Wesley* at 75, attempts to distinguish *Kirschbaum* based on the belief that it was decided based on a statutory privilege, not a common law privilege. (Appellant's Brief at 20.) We

disagree. While the *Kirschbaum* court noted that the North Carolina General Assembly had "specifically authorized private parking lot owners in Forsyth County to boot unauthorized vehicles," this was a wholly independent justification to its previous determination that the defendants held a privilege to boot the plaintiff's vehicle. *Kirschbaum* at 788 ("*We have already determined that defendants were privileged to boot plaintiff's car. In addition*, our General Assembly has specifically authorized private parking lot owners in Forsyth County to boot unauthorized vehicles, which further suggests that the act is neither unethical nor unscrupulous.") (Emphasis added.)

{¶ 26} Accordingly, the trial court did not err in granting the appellees' motion for judgment on the pleadings as to the appellant's claim of theft of a motor vehicle.

### b. Theft of Money (Count Two)

{¶ 27} The appellant argues that the trial court erred by dismissing her claim for theft of money. The appellant asserts that the appellees violated R.C. 2913.12 when they booted her vehicle without her consent and knowingly obtained payment of these "unenforceable debts" through threat or intimidation. (Compl. at ¶ 12; Appellant's Brief at 25.)

{¶ 28} Ohio law provides that theft is a specific intent crime that requires the offender to act purposely to cause a certain result. *See*, *e.g.*, *State v. Reeves,* 12th Dist. No. CA2020-01-001, 2020-Ohio-5565, ¶ 25, citing *State v. Crisp*, 10th Dist. No. 06AP-146, 2006-Ohio-5041, ¶ 10. This district has held that the defense of mistake of fact acts as a defense to specific intent crimes such as theft. *State v. Cooper*, 10th Dist. No. 09AP-511, 2009-Ohio-6275, ¶ 9. In such cases, the defendant's honest purpose provides an excuse for the act that would otherwise be criminal. *State v. Bliss,* 10th Dist. No. 14AP-41, 2014-Ohio-4357, ¶ 46, citing *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 64, citing *Cooper* at ¶ 9. We have found that a defendant acts with an honest purpose when he attempts to collect funds that they reasonably believed they had a right to collect, even if that belief is mistaken. *State v. Snowden*, 7 Ohio App.3d 358 (10th Dist.1982); *see also State v. Rodgers*, 1st Dist. No. C-170057, 2017-Ohio-9191, ¶ 12.

{¶ 29} In the case sub judice, the appellees' efforts to collect fines based on the belief—mistaken or not—that the appellant had multiple outstanding parking citations negates the specific intent required to demonstrate theft of money. The federal district

courts in *Canterbury v. Columbia Gas of Ohio*, S.D.Ohio No. C2-99-1212, 2001 U.S. Dist. LEXIS 26286 (Sept. 25, 2001) and *McGee v. E. Ohio Gas Co.*, 111 F.Supp.2d 979 (S.D.Ohio 2000), applying Ohio law in the debt collection context, have rejected claims of theft on similar grounds. *See Canterbury* at *42 ("The Court concludes that Plaintiff's claim fails because she has not pleaded that Columbia specifically intended to steal her money, rather than to collect on a debt which it, perhaps erroneously, believed it could collect."); *McGee* at 988 (finding that the plaintiff's claim for theft failed as there was no dispute that the defendants were attempting to collect on a past-due debt). The appellant's pleadings indicate, at worst, the appellees acted with the mistaken intent to collect on the past-due parking fees. The appellant contends that, unlike *McGee* and *Canterbury*, there was no privity of contract with the appellees in this case. We find this distinction irrelevant as, contractual relationship or not, the appellees had a reasonable belief that the debt was owed. In fact, the appellant has conceded that at least part of the debt was valid as she admitted that she did not pay the meter on March 3, 2023. (Appellant's Brief at 7.) As aptly stated by the trial court, "Plaintiff's theft of money claim fails because she did not allege that any Defendant specifically intended to steal her money, * * * [t]herefore, her claim for theft of money fails to include factual allegations alleging the specific intent element of the offense." (Mar. 13, 2024 Decision and Entry at 12.)

{¶ 30} While the appellant contends that the mistake of fact reasoning by the trial court was based on evidence outside the pleadings, *see* Appellant's Brief at 24-25, we find that the trial court's analysis was appropriately limited to the pleadings as required under Civ.R. 12(C). Because we conclude that the appellees' efforts to collect money from the appellant would, at worst, amount to a mistake of fact, the appellant cannot succeed in her theft of money cause of action.

### 3. Extortion (Count Three) and Coercion (Count Four)

{¶ 31} For harmony of analysis, we will address the appellant's extortion and coercion claims together.

{¶ 32} R.C. 2905.11(A) provides, in relevant part, that a defendant engages in "extortion" when, "with purpose to obtain any valuable thing or valuable benefit or to induce another to do an unlawful act, shall do any of the following: (1) Threaten to commit any felony; * * * (5) Expose or threaten to expose any matter tending to subject any person

to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit." Similarly, the offense of "coercion" is statutorily defined as: "No person, with purpose to coerce another into taking or refraining from action concerning which the other person has a legal freedom of choice, shall do any of the following: (1) Threaten to commit any offense;* * *(3) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, to damage any person's personal or business repute, or to impair any person's credit." R.C. 2905.12(A).

{¶ 33} The appellant claims that the appellees engaged in extortion and coercion when they committed theft of a motor vehicle, a felony-level offense, by booting her vehicle and threatening to withhold possession of the vehicle until the alleged parking fines and fees were paid. The appellant also contends that the appellees engaged in extortion and coercion by sending the appellant the December letter "threatening to report her to credit reporting agencies if she did not pay the outstanding fines and late fees demanded by Appellees." (Appellant's Brief at 26.)

{¶ 34} We can quickly dispatch with the appellant's first theory of extortion and coercion as, for the reasons provided in section two of this decision, we find the appellant's claim of theft of a motor vehicle without merit. Because there was no underlying offense, the appellant cannot succeed as a matter of law. Next, we will address the appellant's theory of coercion and extortion based on the December letter to "[e]xpose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit." R.C. 2905.11(A)(5); R.C. 2905.12(A)(3).

{¶ 35} Ohio courts, both federal and state alike, have been pragmatic in their interpretations of the above statutes. By way of example, when considering whether a demand letter could constitute extortion, courts have found that "a threat to file a civil lawsuit absent payment of a settlement does not constitute the criminal offense of attempted extortion." *Collins v. Allen*, S.D.Ohio No. 1:04-cv-572, 2005 U.S. Dist. LEXIS 9017, *3 (Mar. 16, 2005); *see also Heights Community Congress v. Smythe, Cramer Co.*, 862 F.Supp. 204, 207 (N.D.Ohio 1994), quoting *American Nursing Care of Toledo v. Leisure*, 609 F.Supp. 419, 430 (N.D.Ohio 1984) ("A threat to sue unless an individual agrees to a settlement 'does not constitute a criminal act[.]' * * * [A] threat to sue does not

constitute extortion within the meaning of Ohio Rev. Code § 2905.11(A).").  While courts have noted that a demand to bring a lawsuit may violate the letter of the statute, such an interpretation would create an "absurd result."  *McGee* at 988.  "Since most civil actions have as their aim the receipt of a thing of value, any person who brings a lawsuit is committing an act of extortion in Ohio if the statute has [such a broad meaning]."  *State v. Herculson*, 6th Dist. No. WD-11-080, 2013-Ohio-1838, ¶ 9, citing *Heights* at 207.  The threat to file a lawsuit, even if that action would be utterly meritless, does not amount to extortion.  *Collins* at *4.

{¶ 36} This same reasoning has been applied to letters seeking to collect on past-due bills, terminate credit accounts, or send an account to collections.  As set forth previously, the Southern District of Ohio in *McGee* and *Canterbury* provide instructive authorities on this issue.  In *McGee*, the trial court found the plaintiff's extortion claim failed despite her contention that the defendant sought payment of $314.98 by asserting her obligations to pay another's bill, by terminating her individual account, and by threatening to terminate her credit entirely if she refused payment.  *McGee* at 988.  Relevant to the instant case, the *McGee* court found an " 'absurd' result would be reached * * * if this Court were to find that East Ohio committed extortion by trying to *collect a past-due bill*."  (Emphasis added.)  *Id.* at 988; *see also Canterbury* at *40 ("Plaintiff alleges that Columbia threatened that her gas service would be terminated if she did not pay the disputed debt. * * * The Court agrees with Columbia, that these threats do not rise to level of extortion under Ohio law."). This same reasoning can logically be extended to a claim of coercion.  *See*, *e.g.*, *Zarzeski v. Acceleration Life Ins. Co.*, 7th Dist. No. 81 C.A. 128, 1982 Ohio App. LEXIS 11465, *5 (July 20, 1982) (rejecting a claim that a "demand for payment of an indebtedness" constitutes coercion).

{¶ 37} We are not persuaded by the appellant's efforts to distinguish the cited case law based on her contention that the December letter sought payment of the fines, or it would send the matter to a collection agency.  *McGee* and *Canterbury* both involved collection agents to some degree.  *See Canterbury* at *1-5, 12 (rejecting extortion claim based on letters from defendant and collections agents stating "[i]f this bill is not paid promptly, [defendant] intends to pursue available legal means for collecting this debt"; "[f]ailure to respond to this final offering will leave our client no alternative but to take firm

collection action" and "a creditor of yours * * * has referred your account to our office for collection. Pay in full at our office"). At base, the appellees' effort in this case to collect on past due bills, "is simply not a crime." *Id.* at *42. For the foregoing reasons, the appellees are entitled to judgment as a matter of law as to Counts Three and Four of the complaint.

### 4. Criminal Usury (Count Five)

{¶ 38} Next, the appellant contends the trial court erred by dismissing her criminal usury cause of action.

{¶ 39} Pursuant to R.C. 2905.22, no person shall "knowingly engage in criminal usury." "[C]riminal usury" is statutorily defined as "illegally charging, taking, or receiving any money or other property as interest on an extension of credit at a rate exceeding twenty-five per cent per annum or the equivalent rate for a longer or shorter period, unless either: (1) The rate of interest is otherwise authorized by law; [or] (2) The creditor and the debtor, or all the creditors and all the debtors are members of the same immediate family." R.C. 2905.21(H).

{¶ 40} The appellant alleges that even if she was a party to an implied contract to pay parking fines issued by the appellees, each issuance of a $30 parking citation represented an extension of credit as defined under R.C. 2905.21(A). (Appellant's Brief at 39.) The appellant's complaint notes that the December letter, marked as Figure 8/Exhibit E, represented the terms of the extension of credit by the appellees. (Compl. at ¶ 55.)[5] Based on the increase of $30 per fine, per citation, to $70 per citation in the December letter, the appellant asserts that the appellees "effectively charged" an interest rate of 155 percent per annum, exceeding the 25 percent restriction in R.C. 2905.21(H). (Compl. at ¶ 56-57.)

{¶ 41} Upon review, even accepting that the December letter amounted to an "extension of credit," the appellant's claim fails as extensions of credit for which "[t]he rate of interest is otherwise authorized by law" are expressly exempt from the definition of "criminal usury." R.C. 2905.21(H)(1). R.C. 1343.01(A) directs that interest rates in Ohio are generally limited to eight percent per annum, unless authorized in Division (B) of the

---

[5] The appellant's brief now claims that she "did not 'allege' let alone 'admit' that the December 2022 letter constituted an extension of credit, as the Decision erroneously concludes." (Appellant's Brief at 39.) The appellant's complaint plainly states otherwise. *See* Compl. at ¶ 55 ("[t]he correspondence shown in Figure 8/Exhibit E [of the December 2022 letter] represents an extension of credit by Defendants to Plaintiff").

statute. R.C. 1343.01(B) provides that "[a]ny party may agree to pay a rate of interest in excess of the maximum rate provided in division (A) of this section when * * * [t]he instrument is payable on demand or in one installment and is not secured by household furnishings or other goods used for personal, family, or household purposes." R.C. 1343.01(B)(5).

{¶ 42} Our review of the record reveals that the December 28, 2022 letter provides that payment was indeed available "on demand." (Compl. at ¶ 46.) The letter also indicates that the "amount now due" is twice identified as $105 and was not secured by any consumer good of the kind in the statute. (Compl. at ¶ 46.) Moreover, the appellant "stipulate[d] therein for the payment of interest" by parking on Parks Edge Lane without payment after receipt of the December letter. R.C. 1343.01(A). As set forth in *Pioneer Heating & Air Conditioning, Inc. v. Elbert*, 9th Dist. No. 4027, 1987 Ohio App. LEXIS 7342, *6 (June 3, 1987), R.C. 1343.03(A) is "inapplicable where, as here, there is an implied agreement to interest." *See also In re McLaren*, N.D.Ohio No. B88-04828, 110 B.R. 290, 1990 Bankr. LEXIS 234, *296-97 (Jan. 26, 1990) *aff'd. In re McLaren*, 990 F.2d 850 (6th Cir.1993) (denying criminal usury claim writing "[a]lthough the $15,000 fee would if considered to be interest translate to an interest rate in excess of 25 percent per annum, * * * [the charge] appears clearly to fit into the exceptions for loans payable on demand or in one installment and business loans" under R.C. 1343.01). Here, as noted by the appellant, "Defendants' meters display enforcement hours and the costs to park, so Plaintiff agreed to these conditions by parking." (Aug. 18, 2023 Memo in Opp. at 4.) As such, this case falls within the parameters of R.C. 2905.21(H)(1) as it is a loan payable on demand or in one installment as outlined in R.C. 1343.01(B)(5).

{¶ 43} The appellant posits that the trial court erred when it addressed her alternative argument, raised for the first time in her memorandum contra, that the letter was not an agreement for the extension of credit. The trial court rejected this argument finding "Plaintiff fails to state a claim for criminal usury as a matter of law, because ADC did not charge her excessive interest under any 'instrument.' " (Mar. 13, 2024 Decision and Entry at 21.) The appellant contends that the trial court lost its way as the elements of usury do not require the production of an instrument. This argument misses the mark. Criminal usury does not occur if "[t]he rate of interest is otherwise authorized by law." R.C.

2905.21(H)(1). The General Assembly has otherwise authorized excessive interest where there is an "instrument of writing" "payable on demand or in one installment" and "not secured by household furnishings or other goods used for personal, family, or household purposes." R.C. 1343.01(A), (B)(5). The appellant has only alleged usurious extension of credit through the December 2022 letter. If the December letter is not an agreement for the extension of credit or to pay fines, then there is no "criminal usury" alleged in this case under R.C. 2905.21(H). Regardless of the appellant's theory, she fails to state a claim of criminal usury as a matter of law.

### 5. Pattern of Corrupt Activity (Count Six)

{¶ 44} The appellant next alleges that trial court erred by when it dismissed her Ohio Corrupt Practices Act ("OCPA") claim. The appellant contends that the appellees collectively constitute an enterprise, which purportedly engaged in extortion and criminal usury against the appellant as well as others that parked at Parks Edge Lane.

{¶ 45} The OCPA is modeled after the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Medical Mutual of Ohio v. FrontPath Health Coalition*, 6th Dist. No. L-21-1226, 2023-Ohio-243, ¶ 29; *see also Morrow v. Reminger & Reminger Co. LPA*, 183 Ohio App.3d 40, 2009-Ohio-2665 (10th Dist.2009). To succeed in an OCPA claim, the appellant must demonstrate: "(1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses; (2) that the prohibited criminal conduct of the defendant constitutes a pattern; and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise." (Internal quotations and citations omitted.) *Johnson v. Levy*, 10th Dist. No. 18AP-775, 2019-Ohio-3492, ¶ 15. OCPA claims are subject to heightened pleadings standards, and failure to plead with particularity *each* element of the offense will result in a defective complaint that cannot survive a Civ.R. 12(C) motion for judgment on the pleadings. *Medical Mutual of Ohio* at ¶ 30.

{¶ 46} Concerning the first prong, the appellant's complaint asserts that the appellees engaged in the commission of extortion and criminal usury, which qualify as specifically prohibited state criminal offenses. However, for the reasons set forth previously in this decision, we find that the appellant's claims of extortion and criminal usury fail as a

matter of law, and as a result, she cannot show the requisite "two or more specifically prohibited state or federal criminal offenses." *Id.*

{¶ 47} Arguendo, even if the appellant had satisfied the first prong, she has failed to allege that the appellees' conduct constitutes a "pattern of corrupt activity." R.C. 2923.31(E) defines a "pattern of corrupt activity" as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." This court has found that "a single scheme involving several underlying, unlawful acts" is insufficient to demonstrate a pattern of corrupt activity. *Morrow* at ¶ 33. Thus, "where there is only one purpose, one result, one set of participants, one victim, and one method of commission, there is no continuity and therefore no pattern." (Internal citation and quotation omitted.) *Id.* at ¶ 34.

{¶ 48} In the appellant's complaint, she alleges that "[t]he criminal acts alleged in this Complaint are routinely engaged in by Defendants in the normal course of parking enforcement." (Compl. at ¶ 59.) Even accepting the appellant's allegations as true, she only alleges one variety of predicate acts within the scheme, i.e., to issue and collect payment upon citations for non-payment of parking meters. A single scheme cannot establish a pattern regardless of the number of criminal acts emanating therefrom. *See State v. Schlosser*, 79 Ohio St.3d 329, 334 (1997) ("neither [the OCPA or RICO] intended to make a situation such as three robberies committed by the same person a RICO violation. Instead, while slightly different in definition, both statutes attempt to prohibit an enterprise"); *Herakovic v. Catholic Diocese of Cleveland*, 8th Dist. No. 85467, 2005-Ohio-5985, ¶ 36 ("The substance of appellants' amended complaint is that Bishop Quinn intimidated Constantino, failed to report the other named victims' cases, and paid out settlements through lawyers, which constituted money laundering. These events, although many in number, emanate from a single event, the alleged attempt to conceal the child sex abuse and/or the predatory priest."). Because we find that the appellant has failed to assert the requisite facts as to the first two prongs of her OCPA claim, we decline to examine the third prong. *Medical Mutual of Ohio* at ¶ 30.

{¶ 49} Accordingly, the appellant's OCPA claim fails as a matter of law, and the appellees are entitled to judgment on the pleadings as to Count Six of the complaint.

### 6. Using Sham Legal Process (Count Nine)

{¶ 50} In Count Nine of the appellant's complaint, she alleges that the appellees engaged in a sham legal process in violation of R.C. 2921.52. The appellant contends that the appellees violated the statute by designing their parking tickets to make the recipients believe they were lawfully issued by a governmental agency. (Appellant's Brief at 30.) The appellant contends that the appellees attempted to make their tickets appear "lawfully issued" based on their use of words like "violation" on the envelope and ticket, as well as referring to the amount demanded on the ticket as a "fine" and referencing an "appeal" process. (Appellant's Brief at 30-31.)

{¶ 51} A "sham legal process" refers to "an instrument" that is (1) not "[l]awfully issued," (2) "designed to make another person believe that it is lawfully issued," and (3) "purports to do any of the following: (i) To be a summons, subpoena, judgment, or order of a court, a law enforcement officer, or a legislative, executive, or administrative body[,]" "(ii) To assert jurisdiction over or determine the legal or equitable status, rights, duties, powers, or privileges of any person or property[,]" or "(iii) To require or authorize the search, seizure, indictment, arrest, trial, or sentencing of any person or property." R.C. 2921.52(A)(4)(a) through (c).

{¶ 52} Concerning the first prong, the appellant fails to present facts that explain how the parking violations were not "lawfully issued." Ohio provides a common law right to defend its property against unlawful trespass. *See*, *e.g.*, *Zhelezny*, 2013-Ohio-4337 at ¶ 40. The appellant has conceded that ADC is a private entity that owns Parks Edge Lane. (Compl. at ¶ 3, 8.) The appellant has also acknowledged that the street includes posted restrictions that read, "2 Hour Parking," and "payment is required during the hours of 7:00 a.m. to 10:00 p.m., seven days per week" at a rate of "1.50 per hour for a maximum of 2 hours." (Compl. at ¶ 11-12, 26.) The appellant has conceded that "[the appellees'] meters display enforcement hours and the cost to park, so [the appellant] *agreed to these conditions by parking*." (Emphasis sic.) (Aug. 18, 2023 Memo in Opp. at 20.) "She does not dispute owing [the appellees] $1.50 for the twenty or so minutes she 'commandeered' a parking spot the morning of March 3, 2023." (*Id*. at 4.) The appellant provides no statutory or legal authority, and we can find none, that makes a privately issued parking citation inherently criminal.

{¶ 53} We are similarly unpersuaded that the design of the ticket in this case, and language used therein, would demonstrate that they were not "lawfully issued." Per the figures and exhibits attached to the complaint, the violations and the orange envelope contained the name of the private business, "LAZ Parking," and not a government entity; the violations directed the appellant "to pay or appeal" the violation to a private business, non-governmental website; the violations directed the appellant to pay by "mail in check or money order" to a private address; and the December letter concerning the violations was sent by a private business and makes no mention of a municipal body. (*See* Compl., Attached Ex. A, B, C, D, E.)

{¶ 54} The appellant contends that the terms employed in the documents, such as "violation," "fine," or "officer," make the recipient believe the ticket is lawfully issued. The appellant relies on *State v. Roten*, 149 Ohio App.3d 182, 2002-Ohio-4488 (12th Dist.). In *Roten*, the state presented evidence that the defendant had sent documents "that purported to be judgments, or indictments, or instruments requiring payment of large sums if they did not release appellant's father or failed to respond to appellant's documents." *Id*. at ¶ 21. The documents were "captioned [with indictment]" or "Public Notice of Voluntary Contract Complaint for Declaratory Judgment" "that purported to be judgments, or indictments, or instruments requiring payment of large sums if [recipients] * * * failed to respond to [defendant's] documents." *Id*. at ¶ 21, fn. 1. We find the appellant's reliance on *Roten* misplaced. Unlike the defendant in *Roten*, the appellees hold a right to protect their property from unlawful trespass. Again, a privately issued parking citation is not inherently illegal. Given the explicit references in the documents that this was a citation from a private entity, the design of the ticket itself could not be reasonably confused with a government-issued ticket. Thus, the appellees are entitled to judgment on the pleadings as a matter of law as to the appellant's claim for using a sham legal process.

### 7. Conspiracy (Count Seven)

{¶ 55} Count Seven of the appellant's complaint alleges that the appellees engaged in acts that constitute conspiracy in violation of R.C. 2923.01(J)(2). The appellant's brief argues that the trial court erred by granting the appellees' motion for judgment on the pleadings as to conspiracy and complicity because "[t]he primary offenses have been

adequately alleged and supported, so the derivative claims for conspiracy and complicity are also sufficiently alleged." (Appellant's Brief at 38.)

{¶ 56} Under R.C. 2923.01(A)(1) through (2), a person commits the offense of conspiracy when "(1) [w]ith another person or persons, plan or aid in planning the commission * * *, [or] (2) [a]gree with another person or persons that one or more of them will engage in conduct that facilitates the commission" of one of the "specified offenses." R.C. 2923.01(A)(1), (2). Of the claims alleged in the appellant's complaint, only the violation of OCPA is a "specified offense" under the conspiracy statute. For the reasons provided in section five of this decision, the acts alleged by the appellant, and more specifically the OCPA claim, do not constitute any of the crimes provided under R.C. 2923.01. Because the appellant has failed to successfully allege a "specified offense" under the statute, there can be no conspiracy claim.

{¶ 57} Moreover, a conspiracy cannot exist when the alleged co-conspirators are a single legal entity consisting of a corporation and its agents. *See*, *e.g.*, *Innovative Architectural Planners*, *Inc. v. Ohio Dept. Admin. Servs.*, 10th Dist. No. 23AP-116, 2024-Ohio-824, ¶ 34. In the instant case, the appellant alleges that LAZ is the agent of ADC. Even if true, "[i]t is basic in the law that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Harris v. Bd. of Edn.*, S.D.Ohio No. C-2-86-909, 798 F.Supp. 1331, 1992 U.S. Dist. LEXIS 9499, *1345 (June 26, 1992). When a corporation and its agent work together, there are not two separate people to form a conspiracy. *Innovative Architectural Planners* at ¶ 34, citing *Daudistel v. Silverton*, 1st Dist. No. C-130661, 2014-Ohio-5731, ¶ 45-46. Accordingly, the appellees are entitled to judgment on the conspiracy claim as a matter of law.

### 8. Complicity (Count Eight)

{¶ 58} Finally, the appellant alleges in Count Eight of the complaint that the appellees engaged in complicity in violation of R.C. 2923.03. "Complicity" is statutorily defined as:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

R.C. 2923.03(A)(1) through (4).

{¶ 59} The Supreme Court has found that an "offense must actually be committed before a person may be convicted as an accomplice." *In re M.D.*, 38 Ohio St.3d 149, 151 (1988); *see also* R.C. 2923.03 1974 Committee Comment to H 511. Here, the appellant has failed to sufficiently allege in her complaint that any criminal conduct actually took place. Because the appellant has failed to establish that a predicate offense was committed, the claim of complicity to the underlying offenses must also fail. *See In re B.J.*, 11th Dist. No. 2013-L-091, 2014-Ohio-5701, ¶ 43.

{¶ 60} Thus, the appellees are entitled to judgment on the pleadings as to the appellant's cause of action for complicity.

### V. CONCLUSION

{¶ 61} Having overruled the appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment Affirmed.*

LUPER SCHUSTER and BEATTY BLUNT, JJ., concur.

_____